UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ARLANDI MUHAMMAD,

         Plaintiff,

   v.

SEATTLE POLICE DEPARTMENT
and CITY OF SEATTLE,

         Defendants.

C12-2142 TSZ

ORDER

THIS MATTER comes before the Court on Defendant Seattle Police Department's Motion for Summary Judgment, docket no. 40. Having considered the motion, and all pleadings filed in support of and opposition thereto,[1] the Court GRANTS Defendant's Motion for Summary Judgment.

**Background**

**A. Muhammad's Employment with Seattle Police Department**

Plaintiff Arlandi Muhammad, who is Muslim, was hired by the Seattle Police

---

[1] Defendant's motion to strike, docket no. 51, is DENIED. The Court has considered all admissible evidence in formulating its opinion.

ORDER - 1

Department ("SPD") in 1986.  Muhammad Decl., docket no. 48, at ¶¶ 1, 2.  On March 24, 2008, Muhammad injured his shoulder in an on-duty car collision.  Id. at ¶ 3.  SPD put Muhammad on light duty beginning in June, 2008.  Muhammad Deposition, Mindenbergs Decl., docket no. 47, Ex. 2 at 20:12-14.

### B. Muhammad's Request for Modified Vest

In March 2009, Muhammad indicated that he needed a modified ballistic vest to accommodate his shoulder injury in order to return to full duty.  Muhammad Deposition, Ashbaugh Decl., docket no. 45, Ex. DD at 29:1-19.  SPD gave Muhammad a voucher to obtain a vest and provided a list of three vendors who had contracted with SPD to provide equipment.  Id. at 31:17-32:9.  Muhammad was unsure how to order a vest, so he went to a shop selling police equipment, inquired how to obtain a vest, reviewed several options and selected a vest he believed would meet his needs.  Id. at 32:13-15, 33:20-23.  Muhammad picked up the vest in June, 2009, but he found that he couldn't get it on and off.  Id. at 38:21-25, 39:10-11.  Muhammad was later instructed by SPD to go find a vest that he needed.  Id. at 52:3-6.

Muhammad eventually ordered another vest that he picked up in November, 2009.  Id. at 59:3-8.  Muhammad informed SPD that the vest was inadequate and suggested that a safety officer should inspect the vest.  Id. at 60:16-19, 61:15-18, 62:17-21.  Muhammad was measured for a third vest in December, 2009.  Id. at 83:9-15.  In January, 2010, Muhammad and the safety officer met with a professional ballistic vest manufacturer and ordered another vest.  Muhammad Decl. at ¶ 10.  The manufacturer initially sent the

ORDER - 2

wrong vest, but the correct vest eventually arrived in September, 2010, which met Muhammad's accommodation needs. Id.

### C. Muhammad's Leave Request

In May, 2010, Muhammad was informed that his light duty assignment was ending and he was placed on extended sick leave. Letter to Muhammad, Mindenbergs Decl., docket no. 47, Ex. 4 at MUH005740. He was on sick leave from May 12, 2010, through October 15, 2010. Teeter Decl., docket no. 13, at ¶ 5. Muhammad was released to return to work on October 18, 2010, but did not report to work as scheduled on October 21, 2010, reported for work on October 22, 2010, but went home sick, and was then on sick leave through October 27, 2010. Id. Muhammad was on paid administrative leave from October 29 through November 5, 2010. Id.

On November 7, 2010, Muhammad was involved in an off-duty car accident that resulted in him missing work for several weeks. Muhammad Decl. at ¶¶ 11, 13. Muhammad was assigned to full duty on November 8, 2010, but he did not report to work. Teeter Decl. at ¶ 6. He was on leave from November 9 through December 6, 2010, when all paid leave was exhausted. Id. He was medically released to return to work on December 8, 2010, id., but Muhammad was still suffering symptoms and did not report to work as scheduled. Muhammad Decl. at ¶ 15. He received a letter from SPD on December 13, 2010, indicating that if he did not return to work, he would be charged with job abandonment. Id. at ¶ 16.

On December 14, 2010, Muhammad's health care provider completed a certification for Muhammad's request for Family and Medical Leave ("FML"). McCarty

ORDER - 3

Dep., Mindenbergs Decl. Ex. 4 at 182:9-23.  Although Muhammad was eligible to use family medical leave under SPD policies with proper medical certification,[2] HR Director Mark McCarty determined that the certification was insufficient, id. at 200:1-5, and denied the request.[3]  Muhammad submitted an additional FML request in February 2011, and McCarty reaffirmed his denial of Muhammad's request.  Letter to Muhammad Denying FML, McCarty Dep. Ex. 22.[4]

### D. Termination and Disciplinary Review Board Proceedings

In March, 2011, Muhammad was terminated.  Termination Letter, Ashbaugh Decl, docket no. 45, Ex. BB.  Muhammad exercised his right to appeal the termination to the Disciplinary Review Board ("DRB").  DRB Opinion, Schubert Decl., docket no. 11, Ex. A at 30.[5]  The DRB held hearings on December 7 and 8, 2011.  Id. at 12.  At the hearing,

---

[2] Under the City of Seattle FML policy, an employee is eligible for FML after six months of employment and may take leave for many reasons, including an employee's own serious health condition.  FML Policy, McCarty Dep. Ex. 26 at 4.  A "serious health condition" is defined as an illness, injury, impairment, or physical or mental condition that involves inpatient care in a hospital, hospice, or residential medical care facility; or continuing treatment by a health care provider.  Id. at 3.  An employee is required to provide a health care provider's certification of the condition and need for leave to be entitled to FML.  Id. at 7.

[3] Muhammad's medical provider, Physician Assistant Tim Rhodes, described Muhammad's condition as residual headaches and dizziness.  McCarty Dep. Ex. 18.  McCarty requested more information, and Rhodes told McCarty that the last time he had seen Muhammad was before Muhammad applied for FML, that Rhodes had released Muhammad to return to work several times but each time Muhammad had not returned to work, that because the FML request was made after Rhodes had seen Muhammad, Rhodes was providing information based only on Muhammad's statements, and that Rhodes had no idea what dates Muhammad was requesting leave for.  Transcribed Voicemail from Rhodes, McCarty Dep. Ex. 20.

[4] McCarty denied the second request because, although Muhammad had visited Rhodes again in February, 2011, the certification Rhodes completed provided no information regarding the time period for which Muhammad had requested leave, December 6 through 14, 2010, and did "not support existence of an FML qualifying condition necessitating [Muhammad's] absence at that time."  McCarty Dep. Ex. 22.

[5] The DRB Opinion is found at Exhibit A to the Declaration of Jennifer Schubert, docket nos. 11-1 and 11-2.  Page numbers referenced refer to the internal numbers of the opinion, found in the lower left corner of the document.

ORDER - 4

both sides made opening statements, submitted evidence, and examined and cross-examined witnesses who testified under oath. Id.  Each party also submitted post-hearing briefs to the DRB. Id.  The parties stipulated that the two issues to be determined by the DRB were "whether the termination of Officer Muhammad was for just cause," and, if not, the proper remedy. Id. at 13.

In a detailed written decision, the DRB concluded that just cause supported Muhammad's termination. Id. at 72.  The DRB found that SPD based its termination decision on two internal complaints.  The first arose from Muhammad's failure to report to work on October 21, and November 8, 2010, his failure to follow orders to report to headquarters on November 5, 2010, and his failure to obey orders that he be available by phone while on leave. Id. at 29-30.  The second related to Muhammad's absence without authorization on three consecutive work days in December, 2010, which constituted "job abandonment" under SPD policies. Id.

The DRB determined that Muhammad had committed the conduct alleged in the first internal complaint by being absent without leave ("AWOL") on October 21, 2010, and being insubordinate on November 5, 2010. Id. at 41-51.  It found that SPD had cause to reject Muhammad's FML requests, and therefore the second internal complaint properly stated that Muhammad's unauthorized absences in December 2010 constituted job abandonment. Id. at 60.  Additionally, the DRB concluded that SPD's investigations of Muhammad did not violate his due process rights. Id. at 60-65.  Finally, the DRB

ORDER - 5

concluded that given Muhammad's overall record of attendance and insubordination issues, termination was not too severe a punishment for the proven misconduct. Id. at 65-71.

### E. Procedural History

On November 14, 2012, Muhammad filed suit against SPD in Washington Superior Court. See Ex. 1 to Notice of Removal, docket no. 1-1. SPD removed the case to federal court. See id. In his Amended Complaint, Muhammad asserts a number of claims, including Washington Law Against Discrimination ("WLAD") claims of discrimination based on creed, failure to accommodate, and retaliation, as well as violations of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. See Amend. Comp., docket no. 18 at ¶¶ 4.2 – 4.8.

Pending before the Court is Defendant's motion for summary judgment, docket no. 40, to dismiss all of Muhammad's claims.

## Discussion

### A. Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it may affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent. Id. at 249. To survive a motion for summary judgment, the adverse party must present

"affirmative evidence," which "is to be believed" and from which all "justifiable inferences" are to be favorably drawn.  Id. at 255, 257.

**B. Disciplinary Review Board Findings**

SPD argues that the DRB's rulings are binding on Muhammad.[6]  On August 1, 2013, the Court denied Defendant's motion for partial summary judgment on the basis of issue preclusion.  Hearing Transcript, Ashbaugh Decl. Ex. CC, docket no. 45-8, at 38.  The Court held that issue preclusion applies only to issues actually litigated, and that the issues litigated before the DRB do not preclude Muhammad from proceeding on his claims at issue here.  Id. at 35 (citing Shoemaker v. City of Bremerton, 109 Wn.2d 504 (1987)).  However, the Court also ruled that, although Muhammad could proceed with his *claims*, to the extent the DRB made *findings*, Muhammad could not litigate the findings again.  Id. (emphasis added).

Having reviewed the DRB opinion, the Court concludes that Muhammad is bound by the facts determined at the DRB proceeding, including for purposes of this motion that (1) Muhammad's absences on December 9, 12, and 13 were unapproved and constituted job abandonment; and (2) SPD had just cause for terminating Muhammad.  DRB Opinion at 60, 72.

**C. Washington Law Against Discrimination Claims**

In order to survive summary judgment on a WLAD claim, the plaintiff has the initial burden of proving a prima facie case.  Domingo v. Boeing Employees' Credit

---

[6] Plaintiff relies on FRCP 56(c)(2) to object to the facts asserted by SPD that were considered in the DRB proceeding.  This objection has no merit and will therefore not be addressed further by the Court.

ORDER - 7

1  Union, 124 Wn. App. 71, 77 (2004).  If the plaintiff establishes a prima facie case, an

2  inference of discrimination arises.  Id.  The defendant must then present evidence that the

3  plaintiff was terminated for a legitimate reason.  Id.  The plaintiff has the final burden of

4  proving that the discrimination was a substantial factor in the termination decision.  Id.  If

5  the plaintiff cannot establish specific and material facts to support each element of the

6  prima facie case, the plaintiff's claims cannot survive summary judgment.  Id.  Summary

7  judgment is also appropriate if the plaintiff cannot present evidence that the defendant's

8  reasons are untrue or mere pretext.  Id. at 78.

### 1. Discrimination Based on Creed[7]

To establish a prima facie case of creed discrimination, a plaintiff must provide specific material facts to show (1) he belongs to a protected class, (2) he was treated less favorably in the terms or conditions of his employment than a similarly situated, nonprotected employee, and (3) he and the nonprotected "comparator" were doing substantially the same work.  Domingo, 124 Wn. App. at 81.

The parties do not dispute that Muhammad is Muslim.  However, Muhammad fails to provide evidence to support both the second and third elements of his prima facie case. Muhammad argues that he was treated more harshly than other officers; for example, he was disciplined for minor issues such as contacting his supervisor at a landline rather than

---

[7] In his opposition to the motion, Muhammad argues that he has established a prima facie case for disability discrimination.  Plaintiff's Response, docket no. 46, at 18.  However, the Amended Complaint makes no claim for discrimination based on disability.  See Amend. Compl., docket no. 18, at ¶ 4.4 (SPD's discriminatory actions based on Officer Muhammad's **creed** constitute a violation of RCW 49.60.030) (emphasis added).  The Court does not consider arguments regarding claims not properly alleged in the pleadings.

ORDER - 8

a cell phone. O'Neill Decl., docket no. 49, at ¶¶ 6, 10. However, Muhammad provides no evidence beyond his own speculations and the speculations of Sgt. O'Neill to support these assertions. ("I have never heard SPD take this type of action against any other sworn officer.") O'Neill Decl. at ¶ 11. Furthermore, Muhammad provides no evidence of the treatment of other similarly situated officers. In fact, SPD argues that there were no similarly situated officers, because no one on the force had committed the misconduct committed by Muhammad.

Even if the Court found that Muhammad had enough evidence to establish a prima facie case, SPD provides a legitimate non-discriminatory reason for Muhammad's termination. The DRB found that Muhammad committed misconduct by (1) violating SPD policies regarding absence from duty and insubordination in October and November 2010, and (2) violating City Personnel Rule 6.1 in failing to report for at least three consecutive work days between December 6 and December 14, 2010, without authorization. DRB Opinion at 51-52. Muhammad's absences "were unapproved and constituted job abandonment." DRB Opinion at 52. Muhammad is bound by the DRB's finding that SPD had just cause for terminating him. Id. at 72.

Muhammad therefore has the burden of showing that SPD's articulated reasons are mere pretext for what is a discriminatory purpose. Grimwood v. University of Puget Sound, Inc., 110 Wn.2d 355, 364 (1988). Muhammad provides no evidence of pretext beyond his own speculation and the fact that he was the only sworn officer known to be a Muslim. While Muhammad argues that no other sworn officer has been terminated for job abandonment, he provides no evidence that this reason was pretextual. SPD correctly

ORDER - 9

1  asserts that Muhammad provides no evidence showing that any actor at SPD was
2  motivated by Muhammad's religion.

### 2. Failure to Accommodate

Muhammad alleges that SPD failed to provide him with a reasonable accommodation in violation of WLAD.  Amend. Compl., docket no. 18 at ¶ 4.5. Under WLAD, an employer has an affirmative obligation to reasonably accommodate the sensory, mental, or physical limitations of individuals who suffer an abnormal physical, mental or sensory handicap.  Doe v. Boeing Co., 121 Wn.2d 8, 18 (1993).  The scope of an employer's duty to accommodate is limited to those steps reasonably necessary to enable the employee to perform his or her job.  Id.

WLAD does not require an employer to "eliminate or reassign essential job functions."  Frisino v. Seattle Sch. Dist. No. 1, 160 Wn. App. 765, 778 (2011), review denied, 172 Wn. 2d 1013 (2011).  "To accommodate, the employer must affirmatively take steps to help the employee with a disability to continue working."  Id.   If multiple potential modes of accommodation are available, the employer, not the employee, is entitled to select the mode.  Id. at 779.  If the attempt to accommodate is not effective, the employer may attempt another mode of accommodation, and "previously unsuccessful attempts at accommodation do not give rise to liability if the employer ultimately provides a reasonable accommodation."  Id. at 781.

#### a. Modified Ballistic Vest

Muhammad first argues that SPD failed to reasonably accommodate him by failing to take positive steps in response to his request for a modified ballistic vest.

1  Muhammad argues that his request took longer than necessary, nearly 20 months,
2  because SPD gave Muhammad a voucher to go out and secure his own vest rather than
3  referring Muhammad to a safety officer or engaging with Muhammad to obtain a vest.
4  Muhammad testified that a "normal" vest order runs anywhere from two to four months.
5  Muhammad Dep., Ashbaugh Decl. Ex DD at 14:23-24.  However, Muhammad had never
6  heard of anyone previously getting a custom vest.  Id. at 31:14-16.

7      In this case, SPD took an affirmative step to accommodate Muhammad's shoulder
8  injury by giving Muhammad a voucher to go get a vest.  Id. at 31:19-20.  When the vest
9  Muhammed ordered proved to be inadequate, Muhammad informed SPD and requested
10 the assistance of the safety officer.  Id. at 61:5-18.  Muhammad met with the safety
11 officer one week later, and the safety officer worked with Muhammad to order a vest that
12 would meet his needs.  Id. at 82:23-25.

13     Although Muhammad takes issue with the fact that SPD did not offer to help him
14 obtain the necessary vest, there is no evidence that Muhammad asked SPD for assistance
15 or expressed any concern over obtaining a vest on his own.  Furthermore, there is no
16 dispute that Muhammad ultimately received the requested accommodation of a modified
17 ballistic vest.  Because SPD ultimately provided this reasonable accommodation, SPD's
18 previous attempts to accommodate by offering Muhammad a voucher do not give rise to
19 liability.  See Frisino, 160 Wn. App. At 781.

20     **b.  Light Duty Assignment**

21     Muhammad also argues that SPD failed to reasonably accommodate his disability
22 by denying him light duty assignments as provided to other disabled officers.

23

ORDER - 11

Muhammad alleges that his light duty assignment was revoked only four months after his second shoulder injury in 2009, despite the fact that SPD has a policy that allows up to two years of limited duty.  It is undisputed that SPD allowed Muhammad light duty work for two years following his initial injury in 2008.

Light duty assignments are offered by SPD when officers are "physically unable to perform all the essential functions of their job." Captain Reed Deposition, Mindenbergs Decl. Ex. 5 at 47:10-15.  Light duty assignments change or reassign the essential functions of the job of a police officer, and therefore such assignments are not required as a matter of law under WLAD.  See Frisino, 160 Wn. App. At 778.  Any failure to provide light duty assignment is thus not actionable as a failure to accommodate.

The Court holds that SPD offered Muhammad reasonable accommodation for his shoulder injury by engaging in the accommodation process to obtain a modified ballistic vest, and that SPD was not legally required to extend additional light duty work to Muhammad.

**3.  Retaliation**

Muhammad alleges that SPD retaliated against him for seeking accommodations for his disability, complaining that the department failed to accommodate him, and filing complaints of race and religious discrimination.  Amend. Compl., docket no. 18 at ¶¶ 3.53, 3.55.  To state a retaliation claim, a plaintiff must show that (1) he engaged in statutorily protected activity, (2) an adverse employment action was taken, and (3) there is a causal link between the employee's activity and the employer's adverse action.  Delahunty v. Cahoon, 66 Wn. App. 829, 839 (1992).

ORDER - 12

Muhammad argues that he was denied FML benefits and ultimately terminated as a result of the discrimination claim he filed against SPD.  Amend. Compl. ¶¶ 3.58, 3.59; see Pl.'s Response, docket no. 46 at 7.  Muhammad provides no evidence, beyond his own speculation, of a causal link between his protected activity and the employer's adverse action.  The only evidence related to SPD's reason for terminating Muhammad is the DRB's finding that SPD justly terminated Muhammad for job abandonment and misconduct.  DRB Opinion at 72.  The fact that Muhammad was insubordinate and abandoned his job defeats his retaliation claim.  Muhammad's subjective belief that he was retaliated against for raising a claim of unfair treatment because of his religion and disability cannot defeat summary judgment.  See Griffith v. Schnitzer Steel Indus., 128 Wn. App. 438, 447 (2005) (An employee's subjective beliefs as to his performance are irrelevant).

**D.  Interference with FMLA Rights**

Muhammad alleges that SPD violated Muhammad's FMLA rights in violation of 29 U.S.C. § 2601 *et seq.* and 29 U.S.C. § 2615 *et seq*.  Amend. Compl., docket no. 18 at ¶ 4.6 – 4.8.  Pursuant to 29 U.S.C. § 2611, to be eligible for protection under the statute, an employee must be employed for at least twelve months and work at least 1,250 hours of service during the previous twelve-month period.  During the twelve-month period preceding Muhammad's December 14, 2010, leave request, Muhammad worked a total of 581.5 hours.  Reinen Decl., docket no. 43, at ¶¶ 3-4.  Muhammad is not an eligible employee for purposes of FMLA coverage and therefore his FMLA claims must fail.

An employer may provide more leave protection to employees than what is provided under FMLA, but an employer's own policy does not create a cause of action under FMLA.  See <u>Dolese v. Office Depot, Inc.</u>, 231 F.3d 202, 203 (5th Cir. 2000) (affirming dismissal of employee's FMLA claims when employee was not an "eligible employee" for FMLA purposes, even though the employer offered more generous policies).  Muhammad argues that SPD's failure to grant Muhammad leave under its own FML policy interferes with Muhammad's FMLA rights, but because he was not an eligible employee under the statute, no FMLA rights are at issue.

**Conclusion**

For the foregoing reasons, the Court hereby GRANTS Defendant's motion for summary judgment, docket no. 40, and DISMISSES this case with prejudice.

IT IS SO ORDERED.

Dated this 1st day of April, 2014.

THOMAS S. ZILLY
United States District Judge

ORDER - 14